NATHANIEL WILLIAMS AND JOHN PRENTISS, *Executors and Trustees under the Will of* JAMES MOSHER, *vs.* ELIZA M. MOSHER.—*June,* 1848.

The appellants were appointed executors and trustees under the will of *J. M.* who died on the 27th March, 1845. *Held,* that the commissions of these trustees were subject to the tax of ten *per cent.* in favor of the State, imposed by the act of 1844, ch. 187, though that act did not go into effect until the 2d *June,* 1845.

The auditor allowed the trustees five *per cent.* commission upon certain rents of the trust estate, collected by them in person, and one-half *per cent.* on others, for collecting which, they had previously paid an agent seven and a half *per cent.* and rejected their claim for a solicitor's fee, paid for preparing their answer in this cause. *Held,* that these allowances and this rejection were properly made.

APPEAL from the Court of Chancery.

The appellee filed her bill on the 21st January, 1847, alleging that *James Mosher,* of *Baltimore* city, died in the year 1845, seized and possessed of a large and valuable real and personal estate, having first executed a last will and testament and five codicils thereto. That the appellants, named as executors in the first codicil, had taken out letters testamentary on the estate of the testator, and entered upon the discharge of their duties as executors. That complainant is the widow of *James Mosher, Jr.* deceased, a son of the testator, by whom she had three children, all of whom were alive at the date of the last codicil to the will. That by the

true construction of the will, the surplus income of the testator's estate, after payment of all debts, legacies, annuities and other charges, was to be invested, and no distribution thereof made until the events therein mentioned should happen. But your oratrix is advised and charges, that by the legal effect and operation of the several codicils, and particularly by virtue of the fourth codicil or memorandum, ratified by the last codicil, the said investment of surplus income is rescinded and revoked, and the executors are requested and directed to appropriate a part of said surplus to your oratrix, for the benefit of her children, and out of the residue, if any, to allow $150 for the benefit of the family of *Dr. Williams*, which last provision is subsequently modified by the last codicil in the manner therein mentioned. That upon the whole effect and construction of said will and codicils,—and until the final settlement of the estate, that is until all the annuities shall cease and fall in, there is no other use or purpose to which the annually accruing surplus can be applied, than for the benefit of your oratrix's said children; and she charges that said surplus is equitably designed for the benefit of her said children, and ought to be so decreed as their rights. That if the executors have a discretionary power to determine what part of the same should be appropriated for the benefit of said children, a court of equity will, if necessary, compel them to exercise a sound discretion, by appropriating the whole, or a substantial part thereof, to that purpose.

The bill further charges, that the debts of the testator have been fully paid, and there will hereafter remain an annual surplus in the hands of the executors, of no very large amount, which they are willing to apply to the benefit of the children of the complainant, if any discretion is vested in them, and they shall be protected in so doing by the authority of this court, at least until said annual surplus shall exceed the annuity bequeathed by the *last of said* codicils, for the benefit of the family of *Dr. Williams*. The bill then prays that the executors may account in this court for the personal estate and the income of the real estate of their testator received by

them, and for an order directing said executors to appropriate the surplus income now in hand, or hereafter to arise from said estate, to your oratrix, to be applied by her for the benefit of her children, and for general relief.

*Exhibit A*, filed with the bill in the will of *James Mosher*, executed on the 13th February, 1840. By this will, the testator first devises to his wife, *Elizabeth Mosher*, in lieu of dower, and of her thirds of his personal estate.—*First*, a negro woman named *Margaret*, who, with her increase, is to be free after the death of his said wife, and to receive thereafter during life, an annuity of Twenty Dollars, to be paid by his executors out of his estate, unless his said wife should express in writing, her disapprobation of said *Margaret's* conduct. *Secondly*, he gives to his said wife during her natural life, his dwelling-house and office, in front thereof, situated on the south side of *Fayette* street, between *Charles* and *St. Paul's* street, in the city of *Baltimore;* the taxes and insurance on the same to be paid out of the income of his other estate and property: and in case said house should be destroyed by fire, then his wife, at her option, was to be furnished with another house, at a rent not exceeding $150, or be paid that sum in quarter-yearly instalments, out of his general estate, for the remainder of her life. *Thirdly*, he gives to his said wife during life, an annuity of $200, over and above the annuity or ground rent of $100 50, secured to her by his marriage contract, which annuity of $200, with the ground rent aforesaid, is to be paid to her in quarter-yearly instalments.

Then, after the bequest of freedom to his negro woman, *Belinda* and her increase, upon certain specified conditions, the will proceeds: "I give and devise unto my friend, *Nathaniel Williams, Esq.* and my nephew, *George R. Mosher*, both of the city of *Baltimore*, the whole of my estate and property, real, personal and mixed, not herein otherwise specifically disposed of, and all debts, rights and claims whatsoever, to which I shall be entitled at the time of my decease, to have and to hold the same, to them and the survivor of them, and the heirs,

executors and administrators of the survivor, *in trust* for the purposes hereinafter expressed."

The will then gives the said trustees the power of leasing or letting out any part of the real estate, for such time and on such conditions as to them shall appear most beneficial, and directs them, in case *Lewis Nickerson*, the grandson of his wife, should be living at the time of his death, "to make, if in their discretion it be necessary, some provision for him, say about Fifty Dollars *per annum*, if the same shall be justified by the condition of my estate, to assist in educating, raising and fitting him for some useful trade;" "the provision for him may be continued so long during his minority, as the said trustees may think proper." He then directs said trustees to pay to his niece, *Isabella Mosher*, so long as she remains unmarried, an annuity of $100, in semi-annual instalments, out of the interest arising on a single bill of her brother, *George R. Mosher*, for $4,500 so long as said debt, or enough of it to raise said annuity, shall remain unpaid, and afterwards out of his general estate.

He then further directs said trustees to pay out of the income of his estate the sum of Twenty-five Dollars, towards educating each of the three younger children (naming them,) of *Charles Nickerson*, the son of his said wife, until they respectively attain the age of fifteen years. He then relinquishes his right, if he acquired any by marriage, to certain property on south *Liberty* street, in said city, and devises the same to *Jane L. Nickerson*, the daughter of his said wife. The trustees are then directed to apply annually the sum of $200, towards the maintenance and support of the family of *William Mosher*, a son of the testator, during his life, no part of which is in any event to be applicable to the payment of any debts contracted, or to be contracted by said *William*. And in the event of the death of his said son, *William*, leaving his present wife surviving him without a child, the trustees are directed to pay her out of his estate, an annual sum of $200, in such instalments as may be convenient, so long as she remains the widow of said *William*; "if in the opinion and judgment of said

trustees, or the survivor of them, the same shall be necessary for her comfort and support, and not otherwise." The will then proceeds: "I will and desire that the clear income of my estate, if any thing remain after the application annually, or otherwise, of the several sums of money hereinbefore charged thereon, shall be invested in such manner as my said trustees, or the survivor of them, shall think proper, and so on from time to time, until a final distribution of my estate be made as hereinafter directed. Upon the decease of my aforesaid son, *William*, I will and desire that a distribution of my estate be made among all my grand-children, to wit: the children of my late son, *James Mosher*, and the children of my aforesaid son, *William*, provided any child he shall have, all my said grand-children to take *per capita*, reserving, however, in the hands of the said trustees for future distribution, if necessary, so much of my estate as will be sufficient to countervail and pay the several annuities or sums of money, hereinbefore provided for the several annuitants or persons hereinbefore named, until the same shall have ceased, when a final distribution shall be made in manner aforesaid, and I hereby authorize and empower the aforesaid trustees and the survivor of them, to make any sale, disposition or deed of conveyance of my estate and property, that may be requisite and proper for making such final distribution, and for otherwise carrying into full effect the provisions of this my will." The said *Nathaniel Williams* and *George R. Mosher* are then appointed executors.

By the *first* codicil to this will executed on the 11th August, 1841, the testator appoints *John Prentiss*, of *Baltimore* County co-executor and devisee in trust with said *Nathaniel Williams*, in place of said *George R. Mosher*, who had recently died, and authorizes said executors to pay annually out of the testator's general estate the sum of $100, to his niece, *Isabella Mosher*, so long as she remains single and unmarried, provided said annuity cannot be raised from the debt owing from her brother mentioned in the will, and also an annuity or yearly sum not exceeding fifty dollars, to *Jane L. Nickerson*, the

daughter of his said wife (in case she should survive her mother and need assistance) so long as she remains single and unmarried, and also to contribute, in their discretion, during the continuance of their trust the annual sum of ten dollars, towards the support of free schools in the city of *Baltimore.*

By a *second* codicil executed on the 30th November, 1841, the testator gives an additional annuity of $200 to his wife during life, and also an additional annuity of $100 to his niece, *Isabella Mosher,* during her single life, and directs that the several annuities mentioned in the will should take effect from the time of his decease.

By a *third* codicil executed on the 13th December, 1841, he revokes the previous disposition made of his servant, *Margaret,* and manumits her absolutely at the expiration of six months from the time of his death, and gives her a legacy of twenty dollars.

The following memorandum was signed by the testator on 3d of June, 1842, in presence of *Neilson Poe.* "It is the desire of *James Mosher,* that if his estate should accumulate beyond the amount required to pay the legacies and bequests in his will, his executors, in their discretion, shall appropriate a part of the surplus to *Mrs. Eliza M. Mosher,* for the benefit of her children until the estate shall be finally settled, and fifty dollars for the benefit of the family of his son *Dr. William Mosher,* and should such an accumulation accrue from the death of his wife, he desires that his executors will appropriate occasionally, according to their best discretion, the amount of $200 *per annum,* for the benefit of the children of *Charles V. Nickerson,* that is, for their support and education, until they shall have been provided for by learning some useful trade or profession, or shall have arrived at the age of seventeen years."

By a *fourth* codicil, duly executed on the 1st May, 1843, the above memorandum was confirmed by the testator and adopted as a part of his will, excepting the sum bequeathed for the benefit of the family of his son *William,* which was revoked, and the sum originally given in the will for that purpose, was

increased to $600, on the same terms and conditions as are prescribed in the will for the original bequest.

*The anwers* of the executors, filed at the same time with the bill, states that they have paid the debts of the deceased and settled up his estate in the Orphans court. They further state, that as trustees, they are desirous to settle an account before this court, and herewith file a statement of all their receipts and payments, for and on account of the said estate, and are content to make any distribution, in the discretion of this court, of the balance in their hands. They, however, suggest a doubt whether the complainant is entitled to any payment from said estate for the purposes set forth in her bill, until all or a part of the annuitants are deceased, all being at this time living.

The cause was then referred to the auditor, who on the 25th March, 1847, filed his report and account, in which he charged the trustees with the amount admitted to have been received by them, and credited them with commissions at five *per cent.* on the amount collected by themselves, and one-half *per cent.* on the residue, consisting of certain ground rents, for the collection of which they had paid to an agent, a commission of seven and a half *per cent.* the tax of ten *per cent.* being deducted and assigned to the State; with sundry disbursements made by them in the discharge of their duties, &c. leaving a balance in their hands of $470, subject to the order of this court, which the auditor suggests, with the future annual surplus of the estate, should, upon proper proof as to their necessities, be paid over to the complainant for the use and benefit of her children. The allowance claimed by the trustees for a fee paid their solicitor for preparing their answer to the bill was rejected.

To this report the defendants excepted. 1st. Because the auditor awards to the complainant the surplus in the hands of the trustees; whereas, they submit, whether the true construction of the will and codicils of the testator entitles her to such surplus in the present condition of the annuitants who are all in full life, and whether, therefore, these defendants would be justified in paying over the same to her. 2d. To the rejection of a solicitor's fee of fifty dollars actually paid by them for

drawing their answer and making up their account in the case. 3. To the allowance of only five *per cent.* commission on the amount of proceeds actually collected by them, there being for further security two trustees, whereas the business is almost necessarily done by one, and inasmuch as the Orphans court of *Baltimore* County, with a knowledge of the trouble and care required for an exact attention to the estate, allowed for the part of the estate administered before them a commission of eight and a half *per cent.* 4th. Because the auditor only allows one-half of one *per cent.* on certain small ground rents, and which require for their collection, an old experienced collector who does not think himself over paid by seven and a half *per cent.*, and only consents to continue to take the trouble because he was accustomed to do so for the testator, and being specially urged thereto by the trustees. 5th. Because the auditor allows tax on the commissions, on behalf of the State, although the testator died on the 27th March, 1845, immediately after which the duties of these defendants commenced, and the act under which the allowance has been made only began to take effect on the 2d June following.

This report and the exceptions thereto being submitted, the Chancellor (JOHNSON) on the 9th April, 1847, passed the following order :—

"The report of the auditor in this case and the exceptions taken thereto, having been submitted without argument, by an agreement filed on the 7th instant, the proceedings have been since read and considered. It is the opinion of the Chancellor, that the memorandum to the will of the late *James Mosher*, and which is adopted and confirmed as a part thereof by his last codicil, executed on the 1st May, 1843, appropriates in the event which has happened, a part of the surplus of his estate, after paying the previous charges thereon, to *Mrs. Eliza M. Mosher*, the complainant, for the benefit of her children, until the estate shall be finally settled. In order, however, that a sound discretion may be exercised upon the subject, in determining what portion of such surplus shall be so applied, it would seem proper that evidence should be intro-

duced, showing the situation and wants of the children to be benefitted by such appropriation.

" The Chancellor does not think, as stated in the bill, that until the final settlement of the estate, there is no other purpose to which the annual surplus of the estate can be applied; on the contrary, he thinks that the provision in the will of the deceased, that the clear income of his estate, after the payment of the sums charged upon it, shall be invested in such manner as his trustees may think proper, would attach to such surplus, and continue to control its application, until the period for the final distribution shall arrive, according to the direction of the will. The distribution of the surplus appearing to be in the hands of the trustees, will therefore be reserved, until some proof shall be offered in regard to the conditions and necessities of the children of the complainant. The other exceptions on the part of the defendants, are not in the opinion of the Chancellor well taken, and will be overruled. It is thereupon ordered this 9th April, 1847, that the report of the auditor of the 17th March, 1847, so far as relates to the charges against and the allowances made to the trustees, be, and the same is hereby ratified and confirmed; and it is further ordered, that the application of the surplus in the hands of the trustees be suspended, until further order, and that the parties have leave to take depositions in reference thereto, before a justice of the peace, upon giving three days notice to the opposite parties, or their solicitor; provided, that the depositions so to be taken, be filed in the Chancery office, on or before the 20th May next. All exceptions at variance with this order, are overruled and rejected."

From this order, the defendants appealed, and at the same time, stated the following grounds upon which their appeal was taken:—

It is the desire and intention of the defendants to appeal to the Court of Appeals from the Chancellor's decree, in overruling the exceptions taken by them to the report of the auditor, in the following particulars:—

*First,* wherein the auditor disallowed the fee of Fifty Dollars paid to their solicitor.

*Second,* wherein the auditor only allowed the defendants five *per cent.* commissions.

*Third,* whereas the auditor only allowed the defendants one-half of one *per cent.* on the amount collected by them through a collector.

*Fourth,* wherein the auditor makes a deduction of ten *per cent.* from the defendant's commissions, on behalf of the State.

The defendants decline to appeal from the decision of the Chancellor, in favor of the complainant.

The cause was submitted without argument to the court— Dorsey, C. J., Spence, Martin and Magruder, J.

By N. Williams for the appellants, and

By R. J. Brent for the appellee.

By the court:                    ORDER AFFIRMED.